UNITED STATES OF AMERICA
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Case No. 20 CR 405 |
| v. | ) Judge Martha D. Pacold |
| WENDALL KEMP | ) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America by its attorney, John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, respectfully submits this memorandum in advance of defendant Wendall Kemp's sentencing for unlawful firearm dealing, in violation of 18 U.S.C. § 922(a)(1)(A). The government submits that a sentence of 24 months' imprisonment, on the low end of the advisory Guidelines' range of 24 to 30 months' imprisonment, is sufficient but not greater than necessary to satisfy the sentencing objectives of 18 U.S.C. § 3553(a).

**I.    BACKGROUND**

On August 6, 2020, defendant was charged by indictment with one unlawful firearm dealing, in violation of Title 18, United States Code, Section 922(a)(1)(A). Presentence Investigation Report (PSR) ¶ 1. On September 1, 2021, defendant pleaded guilty to the charge pursuant to a written plea agreement. *Id.* at ¶ 2; R. 53, 54. This matter is set for sentencing on December 13, 2021. R. 60.

**II.   OFFENSE CONDUCT**

Between August 2019 and April 2020, in three separate transactions, defendant sold two assault rifles, a long gun, a ballistic vest, and substantial

ammunition to an individual who, unbeknownst to defendant, was a confidential source ("CS-2") working on behalf of law enforcement. PSR ¶ 5. At the time of the sales, defendant knew CS-2 was on probation and defendant had previously offered to sell one of the firearms to another member of the Black Disciples, a dangerous street gang operating on Chicago's south side. *Id.* at ¶¶ 6, 7; R. 54 (Plea Agreement) at 2-3. Defendant also knew that two of the three firearms he sold CS-2 were stolen by defendant's firearm supplier. PSR ¶¶ 9, 27; *see also* R. 54 at 4-5. At no time did defendant possess a firearm license permitting him to deal in firearms. PSR ¶ 10.

Specifically, on August 12, 2019, defendant sold CS-2 a Del-ton Inc. Model ATI-15, .556 Cal., AR-15, bearing serial number R10315, along with a substantial amount of ammunition, in exchange for $800. PSR ¶ 6. Prior to the transaction, defendant told CS-2 that defendant had previously offered the AR-15 to another member of the Black Disciples ("Individual 1") but Individual 1 was not interested in purchasing the firearm. *Id.* On August 12, 2019, CS-2 met with defendant at defendant's residence in Chicago. R. 54 at 3. Before handing the AR-15 assault rifle to CS-2, defendant wiped the firearm down with a cloth and WD-40 and explained, in substance, that defendant was removing his fingerprints from the firearm. *Id.* Along with the firearm, defendant sold CS-2 two magazines, numerous rifle rounds, five boxes of ammunition, and one plastic container containing numerous live rounds. *Id.* During the transaction, CS-2 informed defendant that CS-2 was on probation. *Id.*; *see also* PSR ¶ 6. Later that day, defendant also sold CS-2 a ballistic vest in exchange for $350. PSR ¶ 6.

On April 10, 2020, defendant sold CS-2 a Ruger Model AR-556 Semiautomatic rifle, bearing serial number 857-86762, in exchange for $700. PSR ¶ 7. On April 10, 2020, CS-2 met defendant at defendant's garage at his residence, where defendant wrapped the firearm in a towel and placed it in the trunk of CS-2's vehicle. R. 54 at 3-4. During the transaction, defendant and CS-2 discussed the potential for CS-2 to purchase another firearm from defendant and defendant explained to CS-2 that defendant "got enough shit to shake the city," meaning defendant had access to a large supply of firearms. *Id.* at 4*; see also* PSR ¶ 7.

Days later, on April 13, 2020, defendant sold CS-2 a Springfield Firearm Corporation Saint Model Long Gun, bearing serial number SE74088 and a magazine in exchange for $850. PSR ¶ 8. Between approximately April 10, 2020 and April 13, 2020, defendant exchanged a series of text messages and had phone conversations with CS-2 in which KEMP coordinated CS-2's purchase of a long gun. R. 54 at 4. During a phone call on April 10, 2020, between defendant and CS-2, CS-2 reminded defendant that he was on probation and asked if the firearm could come concealed in a bag. *Id.* Defendant agreed. *Id.* On April 13, 2020, CS-2 met defendant at the garage at defendant's residence where defendant showed CS-2 the firearm concealed in a black bag before loading the bag into the trunk of CS-2's vehicle. *Id.* During the transaction, defendant bragged to CS-2 that defendant's firearm supplier works at Delivery Company 1 and the firearm supplier had stolen a package of firearms being shipped to a gun store. *Id.*; *see also* PSR ¶ 11. Both the Ruger Model AR-556 semiautomatic rifle, serial number 857-86762, which KEMP sold CS-2 on April 10,

3

2020, and the Springfield Firearm Corporation Saint Model Long Gun, bearing serial number SE74088, which KEMP sold CS-2 on April 13, 2020, were shipped by Delivery Company 1 in or about April 2020. R. 54 at 4-5; PSR ¶ 27. The firearms' shipper reported the package containing the firearms as lost in transit with Delivery Company 1. R. 54 at 5.

### III. GUIDELINES CALCULATIONS

The government has reviewed the PSR and agrees with the calculation of defendant's offense level, which is consistent with the Plea Agreement. PSR ¶¶ 23-32. Pursuant to the PSR and Plea Agreement, defendant's total offense level is 17. *Id.* at ¶ 36; *see also* R. 54 at 8.

Specifically, defendant's base offense level is 12 pursuant to § 2K2.1(a)(7). *Id.* at ¶ 23. Pursuant to Guideline § 2K2.1(b)(1)(A), defendant's offense level is increased by two levels because the offense involved three firearms. *Id.* at ¶ 26. He also receives a two-level enhancement pursuant to Guideline § 2K2.1(b)(4)(A) because two of the three firearms were stolen, namely the Ruger Model AR-556 semiautomatic rifle, bearing serial number 857-86762, and the Springfield Firearm Corporation Saint Model Long Gun, bearing serial number SE74088. *Id.* at ¶ 27. Additionally, defendant receives a four-level enhancement for trafficking in firearms pursuant to Guideline § 2K2.1(b)(5). *Id.* at ¶ 28. Defendant's also receives a three-point reduction in offense level pursuant to Guidelines § 3E1.1(a) and (b), resulting in a total offense level of 17. *Id.* at ¶¶ 34-35.

The government also agrees with the PSR that defendant has zero criminal history points and a criminal history category of I. PSR ¶¶ 48-49. This is consistent with the Plea Agreement. R. 54 at 8.

## IV. ARGUMENT AS TO SENTENCING FACTORS

After considering the Guidelines' range, the Supreme Court has directed that "the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall v. United States*, 552 U.S. 38, 49-50 (2007). For the reasons set forth below, the government recommends defendant be sentenced to a term of 24 months' imprisonment, on the low end of the calculated advisory Guidelines' range. Such a sentence is "sufficient, but not greater than necessary" to satisfy the statutory sentencing objectives of 18 U.S.C. § 3553(a).

### A. Defendant's History and Characteristics Support a Guidelines' Range Sentence of 24 Months' Imprisonment.

Defendant endured an abusive and impoverished childhood but went on to build a stable life for himself and his family. *Id.* at ¶¶ 59-61, 65-66, 68-69. Prior to the instant offense, defendant had not had a criminal conviction or arrest since 2004. PSR ¶¶ 47, 57. He reported that he was employed full-time from 2014 through August 2020 and, in late September 2021, after pleading guilty in the instant case, began another full-time position. *Id.* at ¶¶ 94-25, 92. However, defendant's lawful employment and strong family support did not dissuade defendant from engaging in multiple illegal gun sales with individuals associated with the Black Disciples. Defendant was employed full-time during the three gun sales at issue. PSR ¶ 94; *id.* ¶¶ 5-7. All three sales occurred at defendant's home, where he resides with his wife.

*Id.* at ¶ 70. Moreover, defendant's minimal criminal history is already taken into account in the advisory Guideline range calculation.

In aggravation, defendant misrepresented his employment status to the Court and government in order to modify his bond conditions on pretrial release. On November 4, 2020, defendant moved the Court to expand his conditions of home incarceration to allow him to attend work based on the representation that he had "secured employment at Platinum Detail in Bourbonnais, Illinois" from 9 am to 6 pm Monday through Saturday. R. 29. The government did not oppose the motion and the Court subsequently granted it. R. 30. Six months later, in a second unopposed motion to further expand his bond conditions from home incarceration to a nightly curfew, defendant again represented to the Court that he was employed at Platinum Detail working Monday through Saturday from 9 am to 6 pm. R. 37. The Court granted the motion, modifying defendant's home incarceration to a nightly curfew. R. 38. However, the government now understands that defendant did not work at Platinum Detail for more than two days in total, and was largely unemployed until September 2021.[1]

---

[1] In speaking with defense counsel last week, the government understands defendant now contends that he worked at Platinum Detail for one day in November 2020 and one day in April 2021, on or around the dates of defendant's two motions to modify his bond conditions. This, however, is far from the representation he twice made to the Court that he had secured employment and worked six days a week. R. 29, R. 37.

The government's review of records defendant provided to Pretrial Services demonstrate that defendant obtained a different job through a staffing company that began on or about November 24, 2020 and he received three paychecks from different staffing companies in December 2020 and January 2021. However, based on records defendant provided to Pretrial Services, defendant was unemployed from approximately January 2021 to September 2021.

6

Defendant did not identify the Platinum Detail job in his interview with the Probation Office but rather represented he was unemployed during the period August 2020 to September 2021. PSR ¶ 93. According to Pretrial Services, defendant advised Pretrial Services that the Platinum Detail job did not work out shortly after the Court granted defendant's motion to modify his home incarceration (on November 5, 2020, *see* R. 30) and never provided Pretrial Services with a paystub from Platinum Detail. While Pretrial Services was apparently aware of defendant's lack of employment, neither the Court nor the government were advised that defendant did not, in fact, work six days a week for Platinum Detail. Rather, defendant misrepresented his employment status in his April 2021 motion seeking a significant modification to his pretrial release conditions to move from home incarceration to a nightly curfew. R. 37. Under the Guidelines, this conduct, if willful, constitutes obstruction of justice which can result in a two-level enhancement on defendant's offense level. *See* Guideline § 3C1.1, Application Note 4(F) (an example of conduct for which the adjustment applies is providing materially false information to a judge or magistrate judge). While the government reserves the right to argue for an obstruction of justice enhancement at sentencing, the conduct, at minimum, demonstrates defendant's lack of candor to the Court and belies defendant's contention that he is remorseful and appreciates the seriousness of the offense.

**B. A Sentence of 24 Months' Imprisonment Will Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Protect the Public, and Afford Adequate Deterrence.**

The proliferation of, and easy access to, illegal firearms, fuels the high levels of gun violence that plague the city of Chicago. In 2020, Chicago logged 3,261 shootings and approximately 770 murders, nearly 90% of which were a result of gun violence.[2] This was an increase of more than 50% from 2019.[3] Defendant's conduct—selling multiple assault rifles, a ballistic vest and ammunition to an individual he knew to be on probation and affiliated with a violent street gang—directly contributed to the danger citizens of the Northern District of Illinois face each day. But for the fact that CS-2 was working with law enforcement, these dangerous weapons would have been on the streets of Chicago.

Defendant was fully aware he was selling stolen weapons to individuals who would likely use the weapons for violence. In addition to knowing CS-2 was on probation, defendant admitted that he had previously offered one of the AR-15 rifles he sold to CS-2 to another member of the Black Disciples, a violent street gang on Chicago's South side. *See* Plea Agreement, R. 54 at 2-3. Moreover, defendant took the time to wipe down one of the AR-15 assault rifles to remove defendant's own

---

[2] Jessica D'Onofrio and Craig Wall, *2020 Cook County deaths breaks records due to gun violence, opioid overdose, COVID-19, ME says*, ABC News, *available at* https://abc7chicago.com/chicago-shootings-2020-shooting-crime-stats-statistics/9250374/ (last visited September 15, 2021); *see also* Table 13, Chicago Police Department 2020 Annual Report, *available* at https://home.chicagopolice.org/wp-content/uploads/Annual_Report_2020.pdf (last visited November 24, 2021).

[3] Table 13, Chicago Police Department 2020 Annual Report, *available* at https://home.chicagopolice.org/wp-content/uploads/Annual_Report_2020.pdf (last visited November 24, 2021).

fingerprints from the firearm. *Id.* at 3. This conduct suggests defendant was aware of the high probability that the firearm would be used to commit a crime and he wanted to avoid the firearm coming back to him. Far from naïve about the impact of his actions, defendant bragged to CS-2 that he dealt in stolen firearms, *see* PSR ¶ 9, and that he had a large enough supply of firearms to "shake the city." PSR at ¶ 7. Defendant's meaning was clear: he was selling weapons he believed would be used in violence or other criminal activity.

Additionally, a 24-month sentence provides adequate deterrence for defendant and others, and promotes respect for the law. According to the PSR, defendant has not served a period of incarceration for his prior criminal history. *See* PSR ¶¶ 42-47. As a result, the government acknowledges that a shorter term of imprisonment would likely deter defendant. However, the seriousness of this offense and the danger posed by defendant's conduct requires a sentence that would also promote his respect for the law and provides general deterrence. Defendant sold multiple firearms over an approximate 8 month period—this was not a one-time lapse in judgment. Moreover, his misrepresentation to the Court about his employment status to expand his bond conditions further demonstrate his lack of respect for the law. The government respectfully believes a low-Guidelines sentence of 24 months' imprisonment would adequately promote his respect for the law and deter others from selling firearms.

    **C.**    **Supervised Release Conditions.**

The government disagrees with the Probation Office's recommendation that defendant be sentenced to a two-year term of probation. The government recommends defendant be sentenced to a Guidelines' sentence of 24 months' imprisonment to be

9

followed by three years of supervised release, consistent with the Guidelines. However, for the reasons set forth below, the government does agrees with the Probation Office's recommended conditions for defendant's supervised release.

### 1. Mandatory Conditions

The PSR recommends the following mandatory conditions, as numbered in the PSR: [4] (1) not commit another Federal, State, or local crime; (2) perform community service at the discretion of the probation office; (3) not unlawfully possess a controlled substance; (5) refrain from unlawful use of a controlled substance and submit to drug testing during supervised release; (7) notify the court of any material change to your economic circumstances that may affect your ability to pay restitution, fines, or special assessments; and (9) cooperate in the collection of a DNA sample if required by law. PSR, pp. 17-18. The government agrees with the imposition of these mandatory conditions, and given that these conditions are mandated by statute, the Court need not give any reason or explanation for the imposition of these mandatory conditions. *United States v. Bryant*, 754 F.3d 443, 445 (7th Cir. 2014).

### 2. Discretionary Conditions

In addition to the mandatory conditions, the Court has discretion to impose additional conditions of supervised release or probation (1) that are "reasonably related" to the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), and

---

[4] As noted above, the Probation Office recommends a term of probation, contrary to the Guidelines' recommendation of a term of incarceration and supervised release. Because of the Probation Office's recommendation, the PSR sets forth recommended conditions of probation as opposed to supervised release conditions. The government is using the numbering of probation conditions set forth in the PSR, although these differ slightly from the numbering attributed to the same conditions of supervised release.

10

(a)(2)(D); (2) that "involve[] no greater deprivation of liberty than is reasonably necessary" to meet the goals of 18 U.S.C. §§ 3553 (a)(2)(B), (a)(2)(C), and (a)(2)(D); and (3) that are "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d); *United States v. Shannon*, 743 F.3d 496, 500 (7th Cir. 2014). Section 3583(d) points to the discretionary conditions set forth in § 3563(b).

Discretionary Conditions 4, 6, 7, 8, and 12 as numbered in the PSR, support defendant's rehabilitation and reintegration into the community and would ensure that he is engaged in lawful pursuits rather than criminal activity. Discretionary Condition 4 requires defendant to seek and work conscientiously at lawful employment and, if not gainfully employed, pursue conscientiously a course of study or vocational training that will equip defendant for employment. While defendant has provided a history of lawful employment from 2014 to 2020, he has struggled to find employment since August 2020 and neither he nor his wife can recall his employment prior to 2014. PSR ¶¶ 91-96. Requiring defendant to work conscientiously at obtaining employment will discourage him from returning to unlawful firearm dealing. Discretionary Condition 6, which prohibits defendant from knowingly meeting and communicating with any person engaged or planning to be engaged in criminal activity is appropriate in light of defendant's sale of firearms to CS-2 and attempted sale to another Black Disciples gang member. *Id.* at ¶ 6. Discretionary Condition 7, which prohibits defendant from excessive use of alcohol and from any use of narcotics or controlled substances without a prescription, is appropriate given

11

defendant's reported alcohol and infrequent cocaine use. *Id.* at ¶¶ 85-86. Discretionary Condition 8, which bars defendant from possessing a firearm or other dangerous device is appropriate in light of defendant's felony conviction and the offense at issue. Discretionary Condition 12, which directs defendant to complete 100 hours of community service, encourages defendant's positive engagement with the community upon his release.

Discretionary Conditions 14 through 18, and 24, as numbered in the PSR, facilitate effective and efficient supervision of defendant by the Probation Office, and without these conditions, the Probation Office would be severely hampered in assisting defendant to succeed. For example, requiring defendant to remain within the district (Discretionary Condition 14) and report to his probation officer (Discretionary Condition 15) will assist the probation officer in supervising defendant effectively and efficiently. Discretionary Condition 16 allows the probation officer to visit defendant's home, work, school, a community service location or other reasonable location at any reasonable time and to confiscate contraband located in plain view in any of those locations. Moreover, requiring defendant notify a probation officer within 72 hours of any change in residence, employer, or workplace (Discretionary Condition 17) or any arrest, criminal charge, or law enforcement questioning (Discretionary Condition 18) allows for necessary probation officer supervision and support of defendant. Finally, permitting a Probation Officer to search defendant's person, property, house, residence, vehicle, papers or office only if there is reasonable suspicion that defendant has violated a condition of his supervised

release is appropriately limited and necessary given defendant's offense involved the possession and sale of stolen firearms.

### 3. Special Conditions

Pursuant to 18 U.S.C. § 3563(b)(22), which allows for "other conditions as the court may impose," the Probation Office recommended eight additional special conditions, seven of which the government agrees are appropriate here.

First, the Probation Office recommends Special Condition 3, which requires defendant, if unemployed after the first 60 days of supervision, to perform at least 20 hours of community service per week until gainfully employed (with the total number of community service hours not to exceed 200). This is an appropriate condition to encourage defendant's positive engagement in the community if he is not employed.

Second, the Probation Office recommends several special conditions aimed at addressing defendant's financial stability. As detailed below, the government agrees all are necessary here. Special Condition 5 prohibits defendant from incurring new credit charges or opening additional lines of credit without approval of a probation officer if he is not in compliance with the financial obligations imposed by the judgment. Special Condition 6 requires defendant provide a probation officer with access to any requested financial information necessary to monitor compliance with conditions of supervised release. *Id.* Special Condition 7 requires defendant notify a probation officer within 72 hours of any significant change to his economic circumstances that might affect his ability to pay restitution, fines, or special assessments. *Id.* Special Condition 8 requires defendant to file accurate tax returns and pay all taxes required by law. These conditions are appropriate here because

13

defendant has a history of bankruptcy and his agreement to repay the United States $2,700 for the government funds he received during the offense. R. 54 at 10; *see also* PSR at ¶ 100.

Third, the Probation Office recommended that defendant "not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court" (Special Condition 11). As the Seventh Circuit has noted, a defendant acting as a confidential informant on supervised release is "generally inconsistent" with the rehabilitative and reintegration efforts of the Sentencing Guidelines because it keeps a defendant in the underground world of criminality at a time when that person is trying to change his life. *See United States v. Kappes*, 782 F.3d 828, 851 (7th Cir. 2015) (finding that the district court's lack of findings to support this condition was harmless because "acting as a confidential informant is generally inconsistent with the rehabilitative and re-integrative goals of supervision").

Finally, the Probation Office recommended that defendant pay the Clerk of the Court $2,700 as repayment to the United States of government funds defendant received during this offense (Special Condition 12). This is consistent with the Plea Agreement. *See* R. 53 at 10. The Probation Office also recommended that defendant pay any financial obligation at a rate of not more than 10% of his total gross earnings minus any tax withholdings (Special Condition 10). This rate is appropriately tied to defendant's earnings and ensures defendant will provide consistent repayments.

14

## V. CONCLUSION

For the reasons stated above, the government respectfully requests that the Court sentence defendant Wendall Kemp to a term of 24 months' imprisonment followed by a three-year term of supervised release.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: */s/ Caitlin Walgamuth*
CAITLIN WALGAMUTH
ANDREW J. DIXON
Assistant U.S. Attorneys
219 South Dearborn Street, Room 500
Chicago, IL 60604
(312) 535-5311

Dated: November 24, 2021